IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHEALE EDWARDS,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | : Civil No. 1:26-CV-0357<br>:<br>:<br>:<br>:<br>: (Chief Magistrate Judge Bloom)<br>:<br>:<br>:<br>: |

MEMORANDUM OPINION

## I. Introduction

Micheale Edwards filed an application under Title XVI of the Social Security Act for supplemental security income on June 20, 2023. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Edwards was not disabled from her application date through June 18, 2025, the date of the ALJ's decision.[1]

Edwards now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to

---
[1] Tr. 14-38.

support a conclusion,'"[2] we conclude that substantial evidence supports the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II. Statement of Facts and of the Case

Edwards filed for supplemental security income, alleging disability due to a traumatic brain injury.[3] Edwards was 44 years old at the time of her application, had at least a high school education, and had no past relevant work.[4]

An ALJ held a hearing on Edwards' disability application on March 20, 2025.[5] Edwards and a Vocational Expert ("VE") both appeared and testified at this hearing.[6] Following this hearing, on June 18, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[7] The ALJ first concluded that Edwards had not engaged in substantial gainful activity since her application date.[8] At Step 2 of the

---

[2] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[3] Tr. 161.
[4] Tr. 31.
[5] Tr. 129-59.
[6] *Id.*
[7] Tr. 14-38.
[8] Tr. 19.

sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from the following severe impairments: history of traumatic brain injury ("TBI"), dysautonomia, palpitations/tachycardia, postural orthostatic tachycardia syndrome ("POTS"), Raynaud's disease, Chilblains, depressive disorder, and post-traumatic stress disorder ("PTSD").[9] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[10]

Between Steps 3 and 4, the ALJ then concluded that the plaintiff has the residual functional capacity ("RFC") to perform a range of light work with additional limitations, including simple routine tasks, no complex tasks, and a low-stress work environment with only occasional decision-making and changes in the work setting.[11] The ALJ considered the medical records, opinion evidence, and the plaintiff's subjective symptoms.[12] Ultimately, the ALJ concluded that the plaintiff was not as

---

[9] *Id.*
[10] Tr. 20-23.
[11] Tr. 23.
[12] Tr. 23-31.

limited as she alleged. Having made these findings, the ALJ found at Step 4 that Edwards had no relevant past work but found at Step 5 that she could perform the occupations of a cashier, cleaner, housekeeper, marker, router, and collator operator.[13] Accordingly, the ALJ found that Edwards had not met the stringent standard prescribed for disability benefits and denied her claim.[14]

This appeal followed.[15] On appeal, Edwards argues that the ALJ erred in her consideration of the medical opinion evidence as it relates to Edwards' ability to stay on task and maintain attendance.[16] This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review and the Disability Determination Process

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-

[13] Tr. 32.
[14] Tr. 33.
[15] Doc. 1.
[16] Doc. 9.

maker are supported by substantial evidence in the record.[17] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[19] The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[20]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[21] Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ adequately articulated the reasons for his decision.[22] The ALJ is not required to use "magic" words, but rather must discuss the evidence

---

[17] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).
[18] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[19] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[20] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).
[21] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).
[22] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

and explain the reasoning behind his or her decision with more than just conclusory statements.[23] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[24]

To be eligible for benefits, a claimant must demonstrate that he or she has a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[25] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[26] In making a disability determination, the ALJ follows a five-step evaluation.[27] The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe

[23] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).
[24] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).
[25] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[26] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[27] 20 C.F.R. §§404.1520(a), 416.920(a).

impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[28]

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity ("RFC")—that is, "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[29] The ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[30] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[31]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

---

[28] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).
[29] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).
[30] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).
[31] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[32] If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[33]

### B. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[34] Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.[35] Supportability means "[t]he more relevant the objective medical evidence and supporting

---

[32] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).
[33] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.
[34] 20 C.F.R. § 404.1520c(c).
[35] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[36] The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[37]

It is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[38] When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[39] Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[40] On the other hand, in cases where no medical opinion credibly supports the claimant's

---

36 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

37 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

38 *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

39 *Mason*, 994 F.2d at 1066.

40 *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[41]

C. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is deferential; we must simply determine whether the ALJ's decision is supported by substantial evidence in the record.[42] Judged against this deferential standard, we conclude that substantial evidence supported the ALJ's decision in this case.

Edwards argues that the ALJ failed to properly consider the opinion evidence regarding her alleged concentration and memory difficulties, as well as time she would be off task or absent. She contends that every medical opinion in the record contained some limitation regarding her ability to perform work on a sustained basis, and that the ALJ failed to address or incorporate those limitations. After consideration, we find no error with the ALJ's assessment of the opinion evidence.

[41] *Cummings*, 129 F. Supp. 3d at 214–15.
[42] *Biestek*, 139 S. Ct. at 1154.

The ALJ considered Nurse Practitioner Rebecca Castle's February 2025 opinion and found it not persuasive.[43] NP Castle, Edwards' treating provider, opined in a check-box form that Edwards would be off task more than 33 percent of the day and absent more than four days per month.[44] The ALJ reasoned that this opinion was not supported by any explanation by NP Castle, nor was it supported by her own treatment records of the plaintiff, which contained mostly unremarkable examination findings.[45] The ALJ also found that these limitations were inconsistent with other evidence in the record showing normal examination findings, and with Edwards' reported activities of daily living.[46]

We discern no error with the treatment of this opinion evidence. As the ALJ mentioned, NP Castle's "check-the-box" form was not supported by any additional explanation or by her own treatment records. The Third Circuit has suggested that "[f]orm reports in which a physician's

---

[43] Tr. 30-31.
[44] Tr. 1501-02.
[45] Tr. 30 (citing Tr. 816, 819, 822, 847, 851, 1432, 1438, 1510).
[46] *Id.*

obligation is only to check a box or fill in a blank are weak evidence at best."[47] We find this to be particularly the case here, where the limitations set forth in the form are not supported by NP Castle's own examination findings during the relevant period, which were largely unremarkable and contained no indication that Edwards would be off-task or excessively absent.[48] While the plaintiff attempts to argue that NP Castle did, in fact, explain her work-preclusive limitations,[49] these explanations were provided *after* the ALJ rendered her decision in this case, and therefore, were not before the ALJ and cannot provide a basis for remanding the ALJ's decision.[50] Moreover, to the extent the plaintiff argues the ALJ's consideration of this opinion is inconsistent with the record, she points only to her subjective reports regarding her impairments,[51] which the ALJ found were not entirely consistent with

---

[47] *Mason*, 994 F.2d at 1065.
[48] *See* Tr. 816, 819, 822, 847, 851, 1432, 1438, 1510.
[49] Doc. 9 at 12 (citing Tr. 43).
[50] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001). We note that the plaintiff has not argued that she is entitled to a new-evidence remand, and as such, has waived any such argument. *Mills-Sorrells v. Colvin*, 153 F. Supp. 3d 703, 713 (E.D. Pa. 2015).
[51] Doc. 9 at 14.

the medical evidence.[52] Accordingly, the ALJ's treatment of NP Castle's opinion does not require a remand.

The ALJ also considered the opinion of the consultative examining psychologist, Dr. Jennifer Enigk, and found it partially persuasive.[53] Dr. Enigk examined Edwards in July of 2024, at which time Edwards reported that she drove herself 40 miles to the examination, had no learning difficulties, and that she was unable to work due to her physical conditions.[54] Based on her examination of Edwards, during which Edwards exhibited clear and fluent speech, impaired attention and concentration, good insight and judgment, and mildly impaired memory, Dr. Enigk opined that Edwards had marked limitations in her ability to carry out complex instructions or make judgments on complex work related decisions and moderate limitations in her ability to respond appropriately to usual work situations and changes in the work setting.[55] Significantly, Dr. Enigk also opined that Edwards' impairments did not

52 Tr. 27.
53 *Id.*
54 Tr. 1389-90.
55 Tr. 1391-93, 1395-96.

affect her ability to concentrate, persist, or maintain pace.[56] The ALJ reasoned that the mild to moderate limitations set forth by Dr. Enigk were supported by her examination of Edwards and consistent with the longitudinal evidence in the record.[57] But the ALJ did not find the marked limitations in this opinion persuasive, as she reasoned these limitations were unsupported by Dr. Enigk's examination findings.[58]

We similarly find no error with the treatment of this opinion evidence. The ALJ adequately explained why she found the opinion partially persuasive, noting that Dr. Enigk's examination supported mild to moderate mental functioning limitations, and why she discounted the marked limitations in the opinion, reasoning that they were not supported by Dr. Enigk's examination. Of note, while the plaintiff argues that Dr. Enigk assessed concentration and pace limitations that went unaddressed by the ALJ, Dr. Enigk's medical source statement provided that Edwards' impairments had no effect on her abilities to concentrate,

---

[56] Tr. 1396.
[57] Tr. 30.
[58] *Id.*

persist, or maintain pace.[59] Accordingly, we conclude there is no basis for a remand.

The ALJ also found the opinion of Dr. Fretz, a state agency consulting physician, mostly persuasive.[60] Dr. Fretz found that Edwards was mildly limited in interacting with others and moderately limited in the remaining three areas of mental functioning.[61] Dr. Fretz made this determination based on his review of the record, which included evidence establishing Edwards' ability to live alone, although she was limited in her activities of daily living, and there was "no evidence of severe dysfunction in any area as per CE."[62] Dr. Fretz noted that while Edwards reported increased cognitive difficulties, she was nevertheless able to engage in various activities of daily living.[63] Ultimately, Dr. Fretz opined that Edwards was "[c]apable of performing simple tasks."[64]

59 Tr. 1396.
60 Tr. 29.
61 Tr. 170, 174-75.
62 Tr. 174-75.
63 Tr. 175.
64 *Id.*

The ALJ found this opinion to be supported by explanations and references to the medical records, as well a consistent with the longitudinal evidence of record and Edwards' reported activities of daily living, which included living alone, taking care of her animals, performing household tasks, shopping in stores and driving, hiking, volunteering, and socializing with friends.[65] While the plaintiff appears to assert that the ALJ was required to parse through each and every "moderate" limitation notated by Dr. Fretz, as the Commissioner points out, the Third Circuit has recognized that this part of the disability determination "is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and *does not constitute the RFC assessment.*"[66] Thus, the ALJ was not required to address each and every notation made by Dr. Fretz in this worksheet.[67] The ALJ did, however, address Dr. Fretz's RFC finding—that Edwards was capable of performing simple tasks—and adopted this

---

65 Tr. 29.

66 *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 636 (3d Cir. 2010) (quoting Program Operations Manual System ("POMS") DI 24510.060) (emphasis in original).

67 *Id.*

limitation in the RFC determination. Accordingly, we find no error with the consideration of this opinion evidence.

In sum, we find that the ALJ considered all the evidence and adequately explained the decision to include or discount certain limitations as established by the evidence. Accordingly, we find no error with the decision and conclude that substantial evidence supported the ALJ's evaluation of this case. As such, this decision will be affirmed.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 7th day of October 2026.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge